IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
PLANO DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| § | | |
| CFO MANAGEMENT HOLDINGS, LLC, *et al.*,[1] § | CASE NO: 19-40426 | |
| § | | |
| DEBTORS. § | CHAPTER 11 | |
| § | | |
| DAVID and KAREN WRIGHT § | ADVERSARY NO. _____ | |
| on behalf of themselves and all § | | |
| others similarly-situated, § | | |
| § | | |
| PLAINTIFFS, § | | |
| § | | |
| v. § | | |
| § | | |
| CFO MANAGEMENT HOLDINGS, LLC, *et al.*, § | | |
| CPIF LENDING, LLC, SMS FINANCIAL § | | |
| STRATEGIC INVESTMENTS, LLC, § | | |
| AND LEGEND BANK, N.A. § | | |
| § | | |
| DEFENDANTS. § | | |

**PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

David and Karen Wright ("Plaintiffs" or "the Wrights"), on behalf of themselves and all others similarly-situated (the "Plaintiff Class" or "Investors"), file this adversary proceeding against CFO Management Holdings, Inc., *et al.*, ("Debtors"), CPIF Lending, LLC ("CPIF"), SMS

---

[1] Carter Family Office, LLC, 5899 Preston Road, Ste. 203, Frisco, TX 75034, EIN# XX-XXX1652, Case No. 19-40432; CFO Management Holdings, LLC, 5899 Preston Road, Ste. 203, Frisco, TX 75034, EIN# XX-XXX6987, Case No. 19-40426; Christian Custom Homes, LLC, 5899 Preston Road, Ste. 203, Frisco, TX 75034, EIN# XX-XXX4648, Case No. 19-40431; Double Droptine Ranch, LLC, 5899 Preston Road, Ste. 203, Frisco, TX 75034, EIN# XX-XXX7134, Case No. 19-40429; Frisco Wade Crossing Development Partners, LLC, 5899 Preston Road, Ste. 203, Frisco, TX 75034, EIN# XX-XXX4000, Case No. 19-40427; Kingswood Development Partners, LLC, 5899 Preston Road, Ste. 203, Frisco, TX 75034, EIN# XX-XXX1929, Case No. 19-40434; McKinney Executive Suites at Crescent Parc Development Partners, LLC, 5899 Preston Road, Ste. 203, Frisco, TX 75034, EIN# XX-XXX2042, Case No. 19-40428; North-Forty Development LLC, 5899 Preston Road, Ste. 203, Frisco, TX 75034, EIN# XX-XXX5532, Case No. 19-40430; West Main Station Development, LLC, 5899 Preston Road, Ste. 203, Frisco, TX 75034, EIN# XX-XXX7210, Case No. 19-40433 (collectively "Debtors" or "Debtor Defendants"). The Debtors other than CFO Management Holdings, LLC are sometimes referred to herein as the "Subsidiary Debtors."

Financial Strategic Investments, LLC ("SMS"), and Legend Bank, N.A. ("Legend Bank") (collectively, CPIF, SMS, and Legend Bank may be referred to as the "Lender Defendants"), seeking relief for themselves and all other investors (excluding the Lender Defendants) in the Debtors and Debtor-controlled entities.

# I.
# Introduction

1. Plaintiffs file this case on behalf of themselves and all other similarly-situated persons who were conned out of vast sums of money by Debtors and parties working with the Debtors. There is no question that the underlying facts as set forth below constitute egregious and unconscionable fraud and breach of fiduciary duty. Indeed, some principals in the massive securities scam have been convicted and sentenced for securities fraud and other crimes. Other participants, including the controlling party of the Debtors, Phillip Carter, have been indicted and await trial.

# II.
# Jurisdiction and Venue

2. Jurisdiction of this action arises under 28 U.S.C. § 1334 and §§157(b) and (c). Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to Plaintiffs' claims occurred in this district. Debtors filed for bankruptcy protection in this district, Defendant Lenders participated in Debtors' Chapter 11 bankruptcy in this district, and Defendant Lenders transacted business in this district.

3. Pursuant to Fed. R. Bankr. P. 7008(a), Plaintiffs state that to the extent the Court determines that any portion of this complaint is non-core, Plaintiffs consents to the entry of final orders or judgment in this adversary proceeding by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgment

consistent with Article III of the United States Constitution. Further, to the extent that any court determines that the Bankruptcy Court does not have the authority to enter a final judgment on any cause of action set forth herein, Plaintiffs request that the Bankruptcy Court issue a report and recommendation for a judgment to the United States District Court for the Eastern District of Texas on any such cause of action.

### III.
### Parties

4. Plaintiffs are individuals residing in Fannin County, Texas. They are husband and wife.

5. CFO Management Holdings, Inc. is a Texas limited liability company. The bankruptcy estates of the Subsidiary Debtors were substantively consolidated with that of Debtor CFO Management Holdings, LLC for all purposes (see Docket No. 248).[2]

6. CPIF is a Washington limited liability company that does not maintain a registered agent in Texas. CPIF may be served through the Texas Secretary of State by serving its registered agent, Corporation Service Company, at 300 Deschutes Way SW, Suite 304, Tumwater, Washington 98501.

7. SMS is an Arizona limited liability company that does not maintain a registered agent in Texas. SMS may be served through the Texas Secretary of State at its business address of 6829 N. 12th Street, Phoenix, Arizona 85014.

8. LEGEND BANK is a financial institution registered to do business in Texas. Legend Bank may be served with process by serving its registered agent, Judy L. Stewart, at 101 W. Tarrant, Bowie, Texas 76230 or wherever she may be found.

---

[2] The substantively consolidated bankruptcy estates of the Debtors will be referred to as the "Estate."

## IV.
## Factual Allegations

**A. The Scam**

9. The Wrights are two of several hundred proposed class members who invested more than $40 million in a massive consumer fraud scheme conceived and perpetrated in part by Phillip Carter ("Carter") and his minions. The Subsidiary Debtors were at one time wholly-owned and controlled by Phillip Carter and/or by entities that Carter controlled, managed, and/or owned. Collectively, these Investors are typically senior citizens of limited means. Many of them invested their life's savings from their Individual Retirement Accounts. Often, they learned of the investment "opportunities" by listening to local radio stations. Only a small fraction of them every saw a penny of return on their investment.

10. The Plaintiff Class invested money through alleged brokers Texas First Financial ("TFF") and a predecessor entity. The TFF principal was Bob Guess ("Guess") a well-known radio personality with financial advice programs. At all times Guess was acting as the agent of Carter and the now Debtor entities.

11. Guess and representatives of TFF offered various investment opportunities to Plaintiffs. One such investment opportunity was North Forty Development, LLC. ("North Forty"), allegedly a "sure thing" developer of commercial properties in Frisco and surrounding areas. Carter controlled North Forty and a myriad of other entities including the Debtors.

12. In 2015 Carter, individually and through Guess and his agents, told Plaintiffs their investments were being used to develop certain commercial office projects in and around Frisco, Texas. Carter and his minions told Plaintiffs that their investments were secured by hard assets and guaranteed to earn 9-10%.

13. Carter appeared with Guess at various promotional events. Investors were given promissory notes, some signed by Guess and others signed by Carter (the "Notes"). The Notes were substantively identical, uniformly fraudulent in that the Maker was either a fictitious entity or a shell corporation, and presented to the Investors by parties not licensed to sell securities.

14. In 2015 and 2016, Carter and Guess signed up victims on a weekly basis.

15. On or about February 25, 2016, the Wrights invested $700,000.00 secured by a Note with North Forty as Maker. Other class members signed notes with additional companies or fictional entities established and controlled by Carter including, but not limited to, "Texas Cash Cow" or "North Forty Development Capital Account."

16. In fact, the entire funding of the North Forty developments was little more than a Ponzi scheme. Although investor money did go to the development of actual, identifiable assets, the investments were high risk, not guaranteed, no liens were ever recorded for the benefit of Plaintiffs, and the payments made to some early investors came from money taken from later investors. At no time relevant herein was Carter, Guess, or any representative of TFF or North Forty licensed to sell securities in the State of Texas.

17. Carter used the money he solicited from class members for his ranch, some single family homes, and real estate projects owned or controlled by the Debtors. Indeed, the assets of the Estate now being liquidated and sold were built and/or improved by funds solicited from investors. In short, the seed money for the scam and whatever real property was developed came from the Plaintiffs and the Plaintiff Class investors. These projects include:

- **Frisco Wade Crossing** - a substantially completed retail development located at 5855 Preston Rd, Frisco, Texas 75034 in the name of Subsidiary Debtor Frisco Wade Crossing Development Partners, LLC;

- **Crescent Parc** - a partially constructed office development located at 1400 Coit Rd., McKinney Texas 75071 in the name of Subsidiary Debtor McKinney Executive Suites at Crescent Parc Development Partners, LLC;

- **Starling House** - a luxury 8,036 square foot home built in 2018 and located at 4009 Starling Dr., Frisco, Texas 75034 in the name of Subsidiary Debtor Christian Custom Homes, LLC;

- **Ranch** - a hunting ranch located on Duncan Road in Ringling, Oklahoma in the name of Subsidiary Debtor Double Droptine Ranch LLC;

- **Raw Land** - approximately 9.4 acres of commercial raw land located at the southwest corner of Main and Majestic Gardens Dr. in Frisco, Texas in the name of Subsidiary Debtor West Main Station Development, LLC; and

- **Single-Family Residences** - four partially constructed single-family residence properties located at 1781 and 1786 Courtland Drive and 1756 and 1784 Hidalgo Lane, respectively, in Frisco, Texas in the name of Subsidiary Debtor Kingswood Development Partners, LLC.

18. Although the Investors were told and believed that their loans were secured by real property, no such liens existed or were filed. Instead, Debtors now seek to classify the Wrights and others as mere "unsecured creditors."

19. The Debtors took Investor funds through fraudulent means. The representations set forth above were made to the Investors by Carter, Guess and others acting on their behalf through TFF or North Forty, over a period of years and were set out in promotional materials, the Notes, meetings, advertisements, and phone calls. The representations were material to the Investors. The representations were false. The Debtors knew the representations were false or, at a minimum, the representations were made recklessly, as a positive assertion, and without knowledge of the truth. The Debtors made the representations with the intent that that the Plaintiffs act on them. Plaintiffs relied on the representations. Plaintiffs have been injured as a result.

20. Moreover, Guess, Carter, and other representatives of the Debtors, acted as financial advisors to Plaintiffs in these transaction creating, at least, an informal fiduciary

relationship. The Debtors breached their fiduciary duties, at least, by failing to disclose that the investments were not secured, that the investments were speculative and not guaranteed to make returns of 9-10% interest, that the parties recommending the investments were not licensed to do so, and that the investments were going to be used for purposes other than just the advertised commercial projects. Again, plaintiffs have been injured as a result of these breaches of fiduciary duty.

21. On or about August 15, 2016, the Texas State Securities Board issued an Emergency Cease and Desist Order against TFF, Guess, and others. The Cease and Desist Order noted, among other things, that "At least $875,000.00, and perhaps as much as $1.4 million, of investor funds placed with North Forty Development, LLC and companies associated with it, were expended for the benefit of the company's principal [Carter] to cover a $1,391,064.88 federal tax lien that was outstanding as of April 2016."

22. On or about January 17, 2017, Carter and some of the Debtors filed a state court interpleader action in Collin County ostensibly to interplead money into the state court for court supervised payments to investors, Cause No. 219-00305-2017, *Texas Cash Cow, et al v. Texas First National Bank, et al,* 219th District Court, Collin County, Texas (the "Interpleader"). In this action, Carter and cohorts announced to the world that they had obtained money under false pretenses and needed to give it back to the Investors. (Of course, Carter proclaimed in that proceeding that he was unaware of Guess' activities.)

23. Remarkably, Carter could not stop himself. Although he made some deposits into the state court, that money was seized by the Secret Service, allegedly because the funds deposited were from new investors and thus a perpetuation of a Ponzi scheme.

### B. The Lender Defendants

24. Despite the available information regarding the scope of the Debtors' schemes and the public actions taken against them by the Texas State Securities Board, the Lender Defendants advanced millions of dollars to Carter and schemed to give themselves a priority lien position.

25. On or about July 26, 2016, Legend Bank loaned approximately $1.4 million to Carter's ranch. Legend Bank now claims secured status, ahead of the investor class.

26. On or about September 27, 2018, CPIF loaned Carter and his sham companies $32 million dollars[3] and executed certain loan and security documents with Carter and related entities that purported to give CPIF a first lien — ahead of the already defrauded Investors — on the very buildings and properties that Carter bought and/or developed with hard-earned Investor money.

27. Of course, by this time, there were multiple public filings noting the fraud upon investors and Carter's pledge to pay them back. Nevertheless, CPIF sought to jump to the front of the line.

28. Finally, on February 13, 2019, mere days before this bankruptcy, SMS loaned the principal amount of $1.25 million to Christian Custom Homes, another entity in Carter's empire. As with CPFI, SMS was careful to grant itself a priority lien on certain assets bought and paid for by members of the class. The SMS loan remarkably included a "premium" that effectively prepaid SMS for interest on the loan.

29. In short, Legend, CPIF, and SMS ask the same thing – pay them 100 cents on the dollar and the Plaintiff Class can patiently wait for a return that will be a small fraction of their losses.

---

[3] The actual amount funded was somewhat less. CPIF purports to be owed approximately $24.7 million.

**PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT**        **Page 8**

30. In truth, because Debtors acquired, developed and/or improved all of the assets with funds wrongfully obtained from the members of the Plaintiff Class, these assets should be held in constructive trust for the benefit of the investors and should not be administered as part of Debtors' estate.

31. As a result, the members of the Plaintiff Class should be entitled to recover their own money from the sale of the assets while Legend, CPIF and SMS await their distributions from the Trustee.

32. Alternatively, the claims of Legend, CPIF, and SMS should be subordinated to the claims of the Plaintiff Class.

## V.
## Class Allegations

### A. Class Definition

33. Pursuant to Fed. R. Bank. P. 7023 and 7023(b)(2)-(3) and any other applicable rules, Plaintiffs bring this class action on behalf of themselves and all others similarly situated.[4]

34. Plaintiffs propose the following class definition for this case:

> Every individual or entity other than the Lender Defendants who/which invested in or loaned money prior to the filing of this bankruptcy to the Debtors and/or related entities (including fictional entities) who have not been fully repaid.

### B. Class Prerequisites

35. Members of the class can be identified through the Debtors' records and the records of others.

36. The proposed class is so numerous that individual joinder of all members would be impracticable.

---

[4] Plaintiffs have filed a class proof of claim and will be requesting that the Court apply Rule 7023 to that claim.

**PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT**   Page 9

37. The subject of this case involves hundreds of class members. While the identities of many of the class members are unknown to Plaintiffs at this time, such information can be readily ascertained through appropriate investigation and discovery. The disposition of the claims of the class members in a single action will provide substantial benefit to all parties and to the Court.

38. Common questions of law and fact exist as to all members of the class. Plaintiffs' claims are typical of the claims of other class members. The common legal and factual questions include, but are not limited to, the following:

   a) Did the Debtors commit fraud or breach of a fiduciary relationship vis-à-vis the members of the Plaintiff Class?

   b) Were the Debtors unjustly enriched?

   c) Can the investments of the Plaintiff Class be traced to identifiable assets?

   d) Should the Court impose a constructive trust over any such assets for the benefit of the Plaintiff Class?

   e) Should the Court equitably subordinate any of the Lender Defendants' claims to those of the Plaintiffs and the Plaintiff Class under Bankruptcy Code § 510(c)?

39. These common issues predominate over those effecting only individual members of the class and a class action is the superior means of resolving this dispute pursuant to Rule 23(b)(3), Fed. R. Civ. P., as made applicable to this proceeding by Fed. R. Bankr. P. 7023.

40. In addition, Debtors and the Lender Defendants have acted or refused to act on grounds generally applicable to the class, thereby making final declaratory relief pursuant to Fed. R. Civ. P. 23(b)(2), as made applicable to this proceeding by Fed. R. Bankr. P. 7023, appropriate with respect to the class as a whole.

41. There are no facts or circumstances so unique to any individual putative class member that would cause that individual to want to control this litigation. The facts of each case do not vary greatly from one putative class member to another.

42. Plaintiffs' claims are typical of the claims of the members of the class. Plaintiffs share the aforementioned facts and legal claims or questions with class members, and Plaintiffs and all class members have been similarly affected by Defendants' actions.

43. Plaintiffs will fairly and adequately represent and protect the interests of the class. Plaintiffs have retained counsel with substantial experience in handling bankruptcy matters as well as complex class action litigation, including class actions by consumer debtors against non-debtor entities, and consumer class actions filed against companies in Chapter 11 bankruptcy proceedings.

44. Plaintiffs and Plaintiffs' counsel are committed to the vigorous protection of this class action.

45. Plaintiffs and Plaintiffs' counsel will fairly and adequately protect the interests of the members of the class. Neither Plaintiffs nor Plaintiffs' counsel have any interests which might cause them not to vigorously pursue this action.

46. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

   a) Individual joinder of all class members is impracticable;

   b) Absent a class, Plaintiffs and class members will continue to suffer harm as result of Defendants' unlawful conduct;

   c) The class necessarily consists of persons in unfavorable economic circumstances who are not able to pay to maintain individual actions against the Defendants;

   d) Even if the individual class members had the resources to pursue individual litigation, it would be unduly burdensome for the court to maintain individual litigation; and

    e) Adjudication of individual class members' claims against Defendants would, as a practical matter, be dispositive of the interests of other class members who are not parties to the adjudication and may substantially impair or impede the ability of other class members to protect their interests.

47. Because Defendants' wrongful conduct is widespread and uniform, this case should be certified for class action treatment pursuant to Fed. R. Bankr. P. 7023(a) and 7023(b)(2)-(3).

## VI.
## Causes of Action

### FIRST CLAIM FOR RELIEF
### (FRAUD)

48. The allegations contained in the foregoing paragraphs are re-alleged and incorporated herein by reference.

49. The conduct above constitutes common law fraud in that the Debtors took investor funds through fraudulent means. Specifically, the Debtors expressly represented that the investments were fully secured by legally enforceable interests in real estate and other hard assets and the investments were guaranteed to generate returns of at least 9-10% interest. At the same time, Debtors failed to disclose that the parties recommending the investments were not licensed to do so and the investments were going to be used for purposes other than the advertised commercial projects.

50. Plaintiffs would show the Court that (1) the representations set forth above were made to the Investors by Carter, Guess and others acting on their behalf through TFF or North Forty, over a period of years through promotional materials, the Notes, meetings, advertisements, and phone calls; (2) the representations were material to the Investors; (3) the representations were false; (4) the Debtors knew the representations were false or, at a minimum, the representations were made recklessly, as a positive assertion, and without knowledge of the truth; (5) the Debtors

made the representations with the intent that that the Plaintiffs act on them; (6) Plaintiffs relied on the representations and (7) Plaintiffs have been injured as a result.

51. As a remedy, Plaintiffs seek a constructive trust. The Debtors committed fraud vis-à-vis the Plaintiffs and the Plaintiff Class. The Debtors were unjustly enriched. The investments of the Plaintiffs and the Plaintiff Class can be traced to the listed assets of the Estate, including:

- **Frisco Wade Crossing** - a substantially completed retail development located at 5855 Preston Rd, Frisco, Texas 75034 in the name of Subsidiary Debtor Frisco Wade Crossing Development Partners, LLC;

- **Crescent Parc** - a partially constructed office development located at 1400 Coit Rd., McKinney Texas 75071 in the name of Subsidiary Debtor McKinney Executive Suites at Crescent Parc Development Partners, LLC;

- **Starling House** - a luxury 8,036 square foot home built in 2018 and located at 4009 Starling Dr., Frisco, Texas 75034 in the name of Subsidiary Debtor Christian Custom Homes, LLC;

- **Ranch** - a hunting ranch located on Duncan Road in Ringling, Oklahoma in the name of Subsidiary Debtor Double Droptine Ranch LLC;

- **Raw Land** - approximately 9.4 acres of commercial raw land located at the southwest corner of Main and Majestic Gardens Dr. in Frisco, Texas in the name of Subsidiary Debtor West Main Station Development, LLC; and

- **Single-Family Residences** - four partially constructed single-family residence properties located at 1781 and 1786 Courtland Drive and 1756 and 1784 Hidalgo Lane, respectively, in Frisco, Texas in the name of Subsidiary Debtor Kingswood Development Partners, LLC.

51. For these reasons, Plaintiffs assert that the assets of the Debtors are owned by the Plaintiffs and Plaintiff Class under a constructive trust and are not part of the Estate.

## SECOND CLAIM FOR RELIEF
### (BREACH OF FIDUCIARY DUTY)

52. The allegations contained in the foregoing paragraphs are re-alleged and incorporated herein by reference.

53. The conduct above constitutes breach of fiduciary duty. Specifically, (1) Guess, Carter, and other representatives of the Debtors, acted as financial advisors to Plaintiffs in these transactions creating, at least, an informal fiduciary relationship; (2) Guess, Carter, and other representatives of the Debtors breached their fiduciary duties, at least, by failing to disclose that the investments were not secured, that the investments were speculative and not guaranteed to make returns of 9-10% interest, that the parties recommending the investments were not licensed to do so, and that the investments were going to be used for purposes other than just the advertised commercial projects; and (3) Plaintiffs have been injured as a result of these breaches of fiduciary duty.

54. As a remedy, Plaintiffs seek a constructive trust. The Debtors committed breach of fiduciary duty vis-à-vis the Plaintiffs and the Plaintiff Class. The Debtors were unjustly enriched. The investments of the Plaintiffs and the Plaintiff Class can be traced to the listed assets of the Estate, including:

- **Frisco Wade Crossing** - a substantially completed retail development located at 5855 Preston Rd, Frisco, Texas 75034 in the name of Subsidiary Debtor Frisco Wade Crossing Development Partners, LLC;

- **Crescent Parc** - a partially constructed office development located at 1400 Coit Rd., McKinney Texas 75071 in the name of Subsidiary Debtor McKinney Executive Suites at Crescent Parc Development Partners, LLC;

- **Starling House** - a luxury 8,036 square foot home built in 2018 and located at 4009 Starling Dr., Frisco, Texas 75034 in the name of Subsidiary Debtor Christian Custom Homes, LLC;

- **Ranch** - a hunting ranch located on Duncan Road in Ringling, Oklahoma in the name of Subsidiary Debtor Double Droptine Ranch LLC;

- **Raw Land** - approximately 9.4 acres of commercial raw land located at the southwest corner of Main and Majestic Gardens Dr. in Frisco, Texas in the name of Subsidiary Debtor West Main Station Development, LLC; and

- **Single-Family Residences** - four partially constructed single-family residence properties located at 1781 and 1786 Courtland Drive and 1756 and 1784 Hidalgo Lane, respectively, in Frisco, Texas in the name of Subsidiary Debtor Kingswood Development Partners, LLC.

55. For these reasons, Plaintiffs assert that the assets of the Debtors are owned by the Plaintiffs and Plaintiff Class under a constructive trust and are not part of the Estate.

**THIRD CLAIM FOR RELIEF**
**(DECLARATORY JUDGMENT)**

56. The allegations contained in the foregoing paragraphs are re-alleged and incorporated herein by reference.

57. Pursuant to 28 U.S.C. § 2201 (West 2019), § 37.001 of the Texas Civil Practices & Remedies Code, and applicable Bankruptcy Rules, the Plaintiffs seek a declaratory judgment to determine the interests and priorities of Plaintiffs, Debtors, and the Lender Defendants in the assets allegedly securing Plaintiffs' investments and the loans of Lender Defendants.

58. In particular, Plaintiffs seek a declaration that:

(i) Any deed executed by Debtors in favor of the Lender Defendants is invalid as the purported assets of the Estate were owned in constructive trust by the Plaintiff Class;

(ii) Any lien purportedly granted by Debtors to the Lender Defendants is invalid as the purported assets of the Estate were owned in constructive trust by the Plaintiff Class and

(iii) The Assets of the Estate are owned by the Plaintiffs and Plaintiff Class under a constructive trust and did not become part of the Estate.

## FOURTH CLAIM FOR RELIEF
### (EQUITABLE SUBORDINATION UNDER § 510(C) PLACING PLAINTIFF CLASS CLAIM AHEAD OF THE CLAIMS OF CPIF AND SMS)

59. The allegations contained in the foregoing paragraphs are re-alleged and incorporated herein by this reference.

60. Alternatively, if the Court does not impose a constructive trust for the benefit of the Plaintiff Class, the Plaintiffs request that pursuant to Section 510(c) of the Bankruptcy Code, the Court subordinate, on equitable grounds, all of the allowed claims of CPIF and SMS, as the priority obtained by those parties injured the Plaintiff Class and conferred unfair advantage on CPIF and SMS.

61. In particular, Plaintiffs would show the Court that CPIF and SMS loaned funds to Debtors with actual and/or constructive knowledge of Debtors' fraud on investors and the falsity of their representations to Plaintiffs.

## FIFTH CLAIM FOR RELIEF
### (ATTORNEYS' FEES)

62. The allegations contained in the foregoing paragraphs are re-alleged and incorporated herein by this reference.

63. Through the conduct described herein, Debtors and the Lender Defendants have inflicted actual damages upon Plaintiffs and the other class members.

64. Moreover, Plaintiffs and the other class members have been forced to retain legal counsel and have incurred reasonable and necessary attorneys' fees which in equity and good conscience should be borne by Debtors and the Lender Defendants.

**WHEREFORE,** having set forth their claims for relief against Debtors and the Lender Defendants, Plaintiffs respectfully pray of the Court as follows:

   a. Certify the class of Investors as defined herein;

    b. Find that the Debtors committed fraud and/or breach of fiduciary duty vis-à-vis the Plaintiff Class;

    c. Find that the Debtors were unjustly enriched;

    d. Find that the investments of the Plaintiff Class can be traced to identifiable assets held by Debtors;

    e. Find that the assets of the Debtors purchased, constructed and/or improved with Investor funds are owned by the Plaintiffs and Plaintiff Class under a constructive trust and did not become part of Debtors' Estate;

    f. Alternatively, find that the claims of CPIF and SMS are equitably subordinated to the claims of the Plaintiff Class;

    g. Award Plaintiffs their reasonable and necessary attorneys' fees incurred in this case and

    h. Provide Plaintiffs and class members such other and further relief as the Court may deem just and proper.

This 6th day of December, 2019.

                                          Respectfully submitted,

                                          */s/ David B. Miller*
                                          David B. Miller
                                          Texas Bar No. 00788057
                                          david@schneidlaw.com
                                          SCHNEIDER MILLER REYNOLDS, P.C.
                                          300 N. Coit Road, Suite 1125
                                          Richardson, Texas 75080
                                          (972) 479-1112
                                          (972) 479-1113 (fax)

                                          Karen L. Kellett
                                          Texas Bar No. 11199520
                                          kkellett@kblawtx.com
                                          Theodore O. Bartholow III
                                          Texas State Bar No. 24062602
                                          thad@kblawtx.com
                                          KELLETT & BARTHOLOW PLLC
                                          11300 N. Central Expressway, Suite 301
                                          Dallas, TX 75243
                                          (214) 696-9000

(214) 696-9001 (fax)

James A. Holmes
State Bar No. 00784290
jh@jamesholmeslaw.com
THE LAW OFFICE OF JAMES HOLMES, P.C.
212 South Marshall
Henderson, Texas 75654
(903) 657-2800
(903) 657-2855 (fax)

**ATTORNEYS FOR DAVID AND KAREN WRIGHT ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY-SITUATED**